

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NUMBER 23-7590010772-L-00 | | PLAINTIFFS |
| VS. | CIVIL ACTION NO. 1:10cv495 LG-RHW | |
| PASS MARIANNE HOMEOWNERS ASSOCIATION | | DEFENDANT |

## COMPLAINT

**COME NOW,** Plaintiffs, Certain Interested Underwriters at Lloyd's, London, Subscribing to Certificate No. 23-7590010772-L-00, ("Underwriters"), and files this their Complaint pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure for the Court's consideration and declaration of the parties' rights or obligations under the insurance contract at issue herein. In support of its Complaint against the Defendant, Plaintiffs respectfully show the Court the following:

### I.
### Parties

1.  Certain Interested Underwriters Subscribing to Policy No. 23-7590010772-L-00 formed Syndicate 4242, which is one of several syndicates of underwriters who severally underwrite insurance in the insurance market commonly known as Lloyd's of London England ("Lloyd's"). All subscribing underwriters to Certificate No. 23-7590010772-L-00 (the "subject policy") are citizens of the United Kingdom.

2.  Defendant Pass Marianne Homeowners Association ("Pass Marianne") is a homeowners association that operates as a condominium complex with its principal location at 26268 Highway 90, Pass Christian, Mississippi 39571. Service may be made upon Pass

Marianne's agent, Walter H. Ketchings, 5352 Red Creek Road, Long Beach, Mississippi 39560.

## II.
## Venue and Jurisdiction

3. This Complaint for Declaratory Relief is brought pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining questions of actual controversy between the parties as hereinafter more fully set forth. The jurisdiction of this Court is based upon diversity of citizenship under 28 U.S.C. § 1332 between the Plaintiffs, citizens of the United Kingdom, and the Defendant. The amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

4. Venue is proper in the United States District Court for the Southern District of Mississippi, Southern Division, because that is where the subject property is located and events or omissions giving rise to the dispute occurred in this district.

## III.
## The Insurance Policy

5. This Declaratory Judgment Proceeding concerns a Hurricane Gustav wind damages claim wherein the Defendant seeks additional payments under a policy of insurance issued by Certain Interested Underwriters at Lloyd's, London, Subscribing to Policy No. 23-7590010772-L-00.

6. The subject Underwriters policy was a Condominium Commercial Coverage policy, issued to Pass Marianne, Inc. and Walter Ketchings, 5362 Red Creak Road, Long Beach, MS 39560, with a policy period of April 1, 2008 to April 1, 2009. *See* Certificate No. 23-7590010772-L-00, attached to the Complaint as Exhibit "A". The policy was amended by endorsement to change the name of the insured to Pass Marianne Homeowners Association. *Id.*

7. The subject Underwriters policy provided coverage for damage caused by wind, subject to various policy terms, conditions, exclusions and provisions. *See* Certificate No. 23-

7590010772-L-00, attached to the Complaint as Exhibit "A".

## IV.
## The Claim and Payments

8. The windstorm known as Hurricane Gustav came ashore near Cocodrie, Louisiana on or about September 1, 2008 and caused general widespread damages in areas along the Gulf Coast.

9. Pursuant to a Property Loss Notice dated August 29, 2008, Defendant made a claim under the subject policy for damage to the insured property. The date and time of loss reported by Defendant was 9/01/08 at 10:00 a.m.

10. The Underwriters retained the independent adjusting firm of TM Mayfield & Company ("Mayfield & Company") and EGP & Associates, Inc. ("EGP") to serve as the Clerk of the Works and Construction Consultant to assist in the adjustment of the claim.

11. Underwriters have made full payment on the claim in the amount of $1,554,556.76.

12. Defendant's representatives dispute that full payment for all covered damages has been made under the policy.

13. Defendant's representatives have failed and continually refused to provide information and materials to Underwriters in support of its claim for additional payments under the policy despite numerous demands to do so.

14. Defendant has failed and/or refused to provide invoices for the repairs that it has made to the property.

15. Defendant has failed and/or refused to provide a sworn statement in proof of loss.

16. Defendant has failed and/or refused to provide estimates for additional repairs which Defendant's representatives contend are needed.

## V.
## Actual Controversy

17. Underwriters hereby specifically raise and assert any and all exclusions, terms, conditions, limitations and provisions applicable to the coverage afforded by the subject Underwriters policy, including but not limited to the following policy provisions, and raise and assert all duties, defenses, claims and obligations imposed under applicable law, in support of its position that Underwriters have paid everything that is owed under the subject policy for covered loss due to wind, and in support of its position that Defendant has materially breached the terms, conditions, and obligations that it has under the subject insurance policy and applicable law, and is not entitled to any additional payments under the policy.

### Condominium Association Coverage Form

. . . .

**A.  Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **1.  Covered Property**
>
>> Covered Property, as used in this Coverage Part, mean the type of property described in this Section, A.1, and limited in A.2., Property Not Covered. If a Limit of Insurance is shown in the Declarations for that type of property.
>>
>> **a.  Building**, meaning the building or structure described in the Declarations, including:
>>
>>> . . . .
>>> **(5)**  If not covered by other insurance:
>>>
>>>> **(a)**  Alterations and repairs to the building or structure;
>>>> **(b)**  Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure . . . .

. . . .

3. **Covered Causes of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

. . . .

**Commercial Property Conditions**

. . . .

B. **Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

. . . .

**Causes of Loss – Special Form**

. . . .

A. **Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:
    1.    Excluded in Section **B.**, Exclusions; or
    2.    Limited in Section **C.**, Limitations . . . .

B. **Exclusions**

    1.    We will not pay for loss or damages caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

        g.    **Water**

            (1)[1]    Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

. . . .

        h.    **"Fungus", Wet Rot, Dry Rot and Bacteria**

            Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

. . . .

    2.    We will not pay for loss of damage caused by or resulting from any of the following:

. . . .

        d.    (1)    Wear and tear;

---

[1] Replaced per endorsement.

    **(2)**  Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

. . . .

    **(4)**  Settling, cracking, shrinking or expansion;

. . . .

  **f.**  Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

. . . .

  **m.**  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

. . . .

**3.**  We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

  **a.**  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

  **b.**  Acts or decisions, including the failure to act or decide, of any person, group, organization, or governmental body.

  **c.**  Faulty, inadequate, or defective:
    (1)  Planning, zoning, development, surveying, siting;
    (2)  Design, specifications, workmanship, repair, construction, renovation, or remodeling;
    (3)  Materials used in repair, construction, renovation, or remodeling; or
    (4)  Maintenance.

. . . .

**C.**  **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.**  We will not pay for loss of or damage to property as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

. . . .

  **c.**  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting

>                    from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
>                    **(1)**    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice sand or dust enters;
>
>          . . . .
>
> **E.**    **Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria**
>
>          **1.**    The coverage described in **E.2** . . . only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
>
>                    **a.**    A "specified cause of loss" [windstorm] other than fire or lightening ….
>
>          **2.**    We will pay for loss or damage by "fungus", wet rot or dry rot or bacteria . . . .
>
>          **3.**    The coverage described under **E.2** of this Limited Coverage is limited to $15,000.

. . . .

**Coverage Form Changes Endorsement**

. . . .

**B.**    The following replaces **A.2. Property Not Covered** for loss or damage caused directly or indirectly by windstorm or hail or Named Windstorm regardless of any other cause or event that contributed concurrently or in any sequence to the loss or damage, unless specifically added by Endorsement.

Covered Property does not include:

. . . .

**o.**    Buildings or structures in the course of construction, including materials and supplies, except alteration of repairs on or within the existing walls of existing buildings or structures insured by this policy.

. . . .

**Causes of Loss Form Changes Endorsement**

. . . .

**A.**    The following replaces **B.1.**

          **1.**    We will not pay for loss or damage that would not have occurred in the absence of one or more of the following excluded events.

        We will not pay for loss or damage regardless of: (1) the cause of the excluded event; or (b) other causes of the excluded event; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss or damage; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread loss or damage, arises from natural or external forces, or occurs as a result of a combination of these.

. . . .

**E.**    The following replaces **B.1.g.(1)**.

    **(1)**    Flood, which is defined to include waves, storm surge, tide or tidal water, and the risking (including the overflow or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams and other similar bodies of water, or surface waters, rain accumulation or run off, or spray from any of the foregoing, all whether driven by wind or not . . . .

. . . .

**H.**    The following are added to **B.2.** Thus, we will not pay for loss or damage caused by or resulting from any of the following:

. . . .

    **v.**    Windstorm or hail or Named Windstorm if the Covered Property is located in a Special Hazard Flood Area (as designated by the Federal Emergency Management Agency) and you do not purchase and maintain insurance providing coverage for the peril of Flood, as defined in this policy, in an amount at least equal to the maximum limits available by the National Flood Insurance Program (NFIP).

        Special Hazard Flood Areas include zones: A, AO, AE, AH, A1-30, A99, V, VE and V1-30.

        However, this exclusion does not apply if the loss or damage occurs within 45 days from the effective date of this policy.

. . . .

. . . .

### OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

**1.**    The Limit of Liability or Amount of Insurance shown in the Declarations, or endorsed onto this policy, is the total limit of the Company's liability applicable to each occurrence as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters or casualties arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail,

flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, vandalism or malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. . . . .

2. The premium for this policy is based upon the Statement of Values on file with the Company or attached to this policy.

. . . .

**DEDUCTIBLE ENDORSEMENT FORM 425:**

. . . .

II. <u>Covered Cause of Loss.</u>

. . . .

A Covered Cause of Loss under this policy shall mean that the particular Cause of Loss is insured under this policy, which shall be documented in the Causes of Loss - Special Form or by the attachment of one or more Endorsement Forms(s) adding such coverage to this policy.

. . . .

Causes of Loss which may be covered under this policy include the following:
- Windstorm or hail (including Named Windstorm and Named Hurricane)

. . . .

VI. <u>Frequency of Deductible Application During the Policy Period.</u>  The Deductible applicable to any loss or damage to Covered Property will be applied separately to each such occurrence of loss or damage during the Policy Period.

VII. Named Windstorm as used herein is defined as a storm system that has been declared to be a hurricane or tropical storm by the National Hurricane Center of the National Weather Service which affects Covered Property.  The duration of the Named Windstorm shall be from the moment a tropical storm or hurricane watch or warning is issued by the National Hurricane Center and continuing for the time period during which the tropical storm or hurricane watch or warning is in effect, ending 72 hours following the termination of the last tropical storm or hurricane watch or warning issued by the National Hurricane Center for such storm.

\* \* \*

3. **Duties in the Event of Loss or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:   . . . .

      (2) Give us prompt notice of the loss or damage.  Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

      (4) Take all reasonable steps to protect the Covered Property from

        further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    (5)    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    (6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

        Also permit us to take samples of damages and undamaged property for inspection, testing and analysis, an permit us to make copies from your books and records.

    (7)    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    (8)    Cooperate with us in the investigation or settlement of the claim.

**b.**    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

******

18.    The facts and circumstances set forth above have given rise to a controversy as to whether the Defendant has materially breached the terms, condition and obligations under the subject policy and applicable law by failing and/or refusing to cooperate in the adjustment of the claim, and by failing/or refusing to provide information and materials which Defendant is required to provide. Defendant has failed and/or refused to provide information and/or materials to show what expenses have been incurred to date for repairs to provide any basis to seek

recovery of additional payments beyond the $1,554,556.76 that has already been paid. Defendant has failed and/or refused to provide a sworn statement in proof of loss. Defendant has failed and/or refused to provide estimates for additional repairs which Defendant's representatives contend are needed. Defendant has materially breached the terms, conditions, and provisions of the subject insurance policy, specifically preventing and/or refusing to allow Underwriters to obtain necessary and full information and materials for the adjustment of the claim.

19. The facts and circumstances set forth above have given rise to a controversy between the parties as to Underwriters' rights, duties and responsibilities, if any, under the Certificate No. 23-7590010772-L-00, and whether Underwriters are obligated to make any further payment to the Defendant for this claim.

20. The parties' respective rights and obligations are consequently in dispute. There is an actual and judiciable controversy between the parties within the meaning of 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rule of Civil Procedure over which this Court is vested with the power to determine and declare

## VI.
## Declarations Sought

21. Underwriters seek a declaration that the applicable underlying terms, provisions, exclusions, and conditions in the policy provided by Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 23-7590010772-L-00 are applicable to the Defendant's claim.

22. Underwriters seek a further declaration that the amount actually spent by the Defendant to repair or replace property damage which was covered under the policy, has not exceeded the amounts which have been paid under the subject Underwriters' policy.

PD.4110907.1

23. Underwriters seek a further declaration that Defendant has materially breached the terms, conditions, and provisions of the policy issued by Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 23-7590010772-L-00, and that as a result, Defendant is not entitled to recover any additional monies under the policy for the subject wind damage claim.

24. Underwriters seek a further declaration that the additional loss or damage being claimed by Defendant is excluded from coverage or is otherwise not a covered loss under the policy issued by Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 23-7590010772-L-00, and that as a result, Defendant is not entitled to recover any additional monies under the policy for the subject wind damage claim.

25. Underwriters further seeks a declaration by the Court that Underwriters have complied with all duties and obligations imposed by Certificate No. 23-7590010772-L-00 and applicable law, and that Underwriters is not obligated to make any further payment to Defendant for this claim.

26. Underwriters seek a further declaration awarding them all further relief to which they may be entitled to at law or in equity.

## VII.
## Prayer

**WHEREFORE, PREMISES CONSIDERED,** Certain Interested Underwriters at Lloyd's, London, Subscribing to Policy No. 23-7590010772-L-00, pray that Defendant be cited to appear and upon final trial, for judgment as follows:

   a. An adjudication and declaration by the Court that the applicable underlying terms, provisions, exclusions and conditions in the policy provided by Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 23-7590010772-L-00 are applicable to the Defendant's claim;

   b. An adjudication and declaration by the Court that the amount actually spent by the

Defendant to repair or replace the lost or damaged property as a result of a covered cause of loss has not exceeded the combined amounts paid by Underwriters under the subject Underwriters' policy;

c.  An adjudication and declaration by the Court that Defendant has materially breached the terms, conditions, and provisions of the policy issued by Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 23-7590010772-L-00, and that as a result, Defendant is not entitled to recover any additional monies under the policy for the subject wind damage claim.

d.  An adjudication and declaration by the Court that the additional loss or damage being claimed by Defendant is excluded from coverage or is otherwise not a covered loss under the policy issued by Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 23-7590010772-L-00, and that as a result, Defendant is not entitled to recover any additional monies under the policy for the subject wind damage claim.

e.  An adjudication and declaration by the Court that Underwriters have complied with all duties and obligations imposed by Certificate No. 23-7590010772-L-00 and applicable law, and that Underwriters are not obligated to make any further payment to Defendant for this claim; and

f.  All further relief to which Underwriters may be entitled to at law or in equity.

**RESPECTFULLY SUBMITTED**, this the 13 day of October, 2010.

> Certain Interested Underwriters at Lloyd's, London,
> Subscribing to Certificate No. 23-7590010772-L-00
>
> PHELPS DUNBAR LLP
>
> BY: _Scott Ellzey_
> Scott Ellzey, MS Bar 10435
> Michael Held, MS Bar 101942
> NorthCourt One, Suite 300
> 2304 19th Street
> Gulfport, MS 39501
> Telephone: (228) 679-1130
> Facsimile: (228) 679-1131